```
          IN THE UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                              *
SCOTTSDALE INSURANCE COMPANY,
                              *
     Plaintiff/Counter-
     Defendant,               *
v.                                    CIVIL NO.: WDQ-04-2356
                              *
NATIONAL CENTER ON
INSTITUTIONS AND              *
ALTERNATIVES, INC.,
                              *
     Defendant/Counter-
     Plaintiff.               *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION AND ORDER

Scottsdale Insurance Company ("Scottsdale") has sued the National Center on Institutions and Alternatives, Inc. ("NCIA"), seeking declaratory judgment that the insurance policy it issued to NCIA is void *ab initio*, and that it has no duty to defend or indemnify NCIA for claims, cross-claims, or third-party claims arising from an incident that took place in September 1999. Pending are Scottsdale's motion for summary judgment and motion in limine. For the reasons discussed below, Scottsdale's motion for summary judgment will be granted and its motion in limine will be denied as moot.

BACKGROUND

On September 29, 1999, Mark Hepburn, a profoundly

mentally and developmentally disabled adult, choked while attempting to swallow half of a bologna sandwich whole. Pl.'s Ex. 9 (Developmental Disability Administration incident reporting form). Hepburn, who received residential care at NCIA, was attending a daily activity program operated by Athelas Institute, Inc. ("Athelas") when the choking incident occurred. *Id.* The episode left Hepburn in a persistent vegetative state. Pl.'s ex. 23 (letter from LaVon J. Grant, R.N. to Mark Hepburn's Treatment Team, June 14, 2000).

On June 15, 2001, NCIA applied for a claims-made general and professional liability policy from Scottsdale Insurance Company ("Scottsdale"). NCIA stated on its application that it was not aware of any circumstances which may give rise to a claim or lawsuit. Pl.'s Ex. 13 (2001 insurance application). Scottsdale issued a policy to NCIA for the July 2001 to July 2002 policy period, and required NCIA to sign a retroactive endorsement in which it declared that it did "not have previous knowledge of any claim or 'suit,'" and that it could not "have reasonably foreseen that any prior acts or incidents might be the basis of any claim or 'suit.'" Pl.'s Ex. 14 (retroactive date endorsement to Feb. 1, 1994).

On June 19, 2002, NCIA applied for a renewal policy with Scottsdale. Pl.'s Ex. 2 (renewal insurance application). In

applying for the policy, NCIA again reported that it was not aware of any circumstances that might give rise to a claim or lawsuit. *Id.* Scottsdale renewed NCIA's policy for the July 2002 to July 2003 policy year. Pl.'s Ex. 1 (insurance policy).

On November 4, 2002, NCIA informed Scottsdale that Mark Hepburn's mother, Deborah Hepburn, had filed suit on his behalf against NCIA for damages arising from the choking incident. Compl. ¶ 15. On June 11, 2003, Scottsdale sent NCIA a reservation of rights letter, explaining that it would defend NCIA, but if NCIA knew about or could have foreseen a claim by Mark or Deborah Hepburn prior to July 30, 2002, it reserved its right to disclaim any duty to defend or indemnify NCIA, and to file an action for rescission. Pl.'s Ex. 3 (reservation of rights letter). Scottsdale also informed NCIA that it was commencing a coverage investigation into the Hepburn claim. *Id.*

On July 21, 2004, Scottsdale sent NCIA a letter of rescission, along with a check for the full amount of the premium paid for the policy. Pl.'s Ex. 7 (rescission letter and check for premium). On July 22, 2004, NCIA acknowledged receipt of the premium check, and stated that it would hold the funds in a trust account pending the outcome of this

3

action.  Pl.'s Ex. 8 (letter regarding holding premium check).

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of

4

evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

ANALYSIS

Scottsdale argues that the insurance policy it issued to NCIA is void *ab initio* because NCIA made a material misrepresentation on its application. NCIA asserts that it had no reason to believe Hepburn's choking incident would give rise to a claim, thus its application and policy are valid, and Scottsdale breached the terms of the policy by failing to provide coverage.

Insurance policies may be voided *ab initio* when an insurer issued a policy in reliance on a material misrepresentation in the application. *North American Specialty Ins. Co. v. Savage*, 977 F. Supp. 725, 728 (D. Md. 1997) (*citing Fitzgerald v. Franklin Life Ins. Co.*, 465 F. Supp. 527, 534 (D. Md. 1979)). The court must engage in a two-pronged inquiry to determine whether an insurer may validly rescind a policy. *Fitzgerald*, 465 F. Supp. at 534.

First, the court must decide whether a misrepresentation occurred. *Id.* NCIA admits that it was aware of Mark Hepburn's choking incident when it applied for insurance, but asserts it did not anticipate a claim or suit would be brought

5

against it because the incident occurred while Hepburn was in Athelas's care and Deborah Hepburn never indicated that she intended to sue. Scottsdale counters that NCIA should have surmised it was potentially liable for Hepburn's injuries because the Maryland Developmental Disabilities Administration ("MDDA") investigated the choking incident and concluded that NCIA violated several regulations in providing Hepburn's care. Pl.'s Ex. 10 (investigation report).

MDDA sent NCIA a Notice of Intent to Impose Intermediate Sanctions because:

> [A]n individual from NCIA/CBAI community residential program with a history of choking incidents choked on his sandwich, and as a result suffered severe brain damage. The sandwich was prepared by NCIA/CBAI. NCIA/CBAI was aware of a choking incident on June 29, 1999, involving this individual and failed to notify the day program, and NCIA/CBAI was aware of a nutritional assessment performed on this individual recommending a mechanical soft diet, and also failed to notify the day program of the assessment.

Pl.'s Ex. 11 (sanctions notice). Herbert Hoelter, NCIA's Executive Director, testified that it is very unusual to receive a notice of sanctions from the MDDA, thus he became concerned that NCIA could be liable for Hepburn's injuries upon receipt of the sanctions notice. Hoelter Aff. at 64, 68. Hoelter assumed, however, that because "the issue was settled without any major licensing issues and just the requirements .

6

. . to do some additional assessments and training and notification," that NCIA was "clear of the incident." *Id.* at 77.

NCIA's belief that it had avoided liability for Hepburn's injuries does not excuse its failure to disclose the incident on its policy application. An insurer may avoid a policy issued in reliance on a material misrepresentation, regardless of whether the misrepresentation was made intentionally, or through mistake and in good faith. *Fitzerald*, 465 F. Supp. at 534.

The court must next determine whether the misrepresentation was material to the risk assumed by the insurer. *Id.* at 535. A misrepresentation is material if the information omitted could reasonably have affected the insurer's determination of the acceptability of the risk. *Nationwide Mutual Ins. Co. v. Sherwood Brands. Inc.*, 111 Md. App. 94, 109 (1996); *see also Metropolitan Life Ins. Co. v. Samis*, 172 Md. 517 (1937) ("A fair test of materiality of a fact is found . . . in the answer to the question whether reasonably careful and intelligent men would have regarded the fact, communicated at the time of effecting the insurance, as substantially increasing the chances of the loss against the insured.").

7

The issue of materiality is usually one of fact for the jury to decide. *Fitzerald*, 465 F. Supp. at 535.  In some cases, however, the materiality of the risk may be so obvious that the court must rule as a matter of law that the misrepresentation is material. *Id.* at 535-36.  That is, if it is manifest from uncontradicted testimony or from the nature of the misrepresentations that the insured's false representations have been material to the risk, the court must find so as a matter of law. *Id.* at 536.

Given Hepburn's severe injuries, it is undisputed that Scottsdale's risk assessment of NCIA would have been influenced by knowledge of the choking incident. *See* Kenny Dep. at 34, 116; Brazell Dep. at 37.

CONCLUSION

Because NCIA made a material misrepresentation on its application for insurance with Scottsdale, its policy is *void ab initio*.  Accordingly, Scottsdale's motion for summary judgment will be granted, and NCIA's counter-claim for breach of contract will be dismissed.

June 7, 2005                              /s/
ate                              William D. Quarles, Jr.
                                 United States District Judge

8